copy thereof, being lodged for the adverse party in the clerk's office where the record remains, within ten days, Sundays exclusive, after rendering the judgment. Judiciary Act 1789, § 23 (1 Stat. 85).

THOMPSON (VOWELL v.). See Case No. 17,023.

THOMPSON (WARD v.). See Case No. 17,-162.

## Case No. 13,980.

THOMPSON v. WELLS et al.

[3 Cranch, C. C. 5.] [1]

Circuit Court, District of Columbia. Dec., 1826.

REPLEVIN—REINSTATEMENT—APPEARANCE.

If the defendant in replevin does not appear at the return term of the writ, the action is discontinued, and the court will not, at a subsequent term, reinstate it, upon affidavit that the defendant requested an attorney to enter an appearance for him, and supposed it had been done.

Replevin. The action was discontinued by the non-appearance of the defendants at the last term.

Mr. Key, for the defendants [Wells and Nicholls], now moved to reinstate it on the docket, upon affidavit of the defendant Wells that on the first day of the last term he requested Mr. Key to enter an appearance for him, and supposed it had been done.

Mr. Key afterwards withdrew his motion, being satisfied that the practice of this court was against him.

THOMPSON, The ISABELLA. See Case No. 7,102.

## Case No. 13,981.

THOMSON v. BRADFORD et al.

[7 Biss. 351.] [2]

District Court, D. Indiana. Jan., 1877.

PRACTICE IN EQUITY — DISTRIBUTION OF FUND — MORTGAGES—PRIORITY OF INSTALLMENTS.

1. When a court of equity obtains control of a fund and the parties entitled to it, it will at once place the money where it will ultimately go.

2. Priority of installments of mortgage debt has its foundation in the rule governing the application of payments, and does not apply to mortgage notes given to secure indorsements.

[This was a bill in equity by John A. Thomson, assignee, against Chandler Bradford and others.]

The petition, which was filed on the 30th

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

day of April, 1874, recites a previous order of court made in Re Joshua Shipp, in bankruptcy, for the sale of certain lands of Shipp, freed of a mortgage to Harvey Lewis, and alleges that all the lands had been sold except one parcel, in which Chandler Bradford claimed an interest, which was a cloud on the title. The purpose of the bill is to extinguish Bradford's claim. Bradford answered May 29, 1875, setting up title by purchase on the ——— day of ———, 1871. On the 27th of August, 1874, Overstreet and Holmes, assignees of Harvey Lewis in bankruptcy, filed a cross-bill setting up a mortgage by Shipp to Lewis on the lands, executed May 1st, 1875, to secure four notes of that date for $5,000 each, at one, two, three and four years, that the second and third of these notes had been assigned by Lewis to Nathan Powell; that Lewis had become bankrupt, and Overstreet and Holmes were appointed his assignees, and that the first and fourth of these notes, together with the mortgage, had come to them as such assignees as assets of Lewis's estate; prayer for payment out of proceeds of sale. On the 27th of August, 1875, Nathan Powell, having been admitted as a party, answered confessing the cross-bill. He also at the same time filed his cross-bill setting up his title to the two notes by bona fide purchase before maturity, and praying the same relief as Overstreet and Holmes in their cross-bill, and such additional relief as might be equitable. Issues were joined on the bill and cross-bills. After the land was sold and certain payments made, a balance of $5,056.71 was left, applicable to the Lewis mortgage.

Byfield & Howe, for assignees of Lewis.

Baker, Hord & Hendricks, for Nathan Powell.

GRESHAM, Circuit Judge. The only question now in the case is as to the distribution of this fund. Lewis's assignees in bankruptcy, claim it as being the holders of the first of the four $5,000 notes. Powell claims it by assignment from Lewis of the second and third notes. Copies of these notes are annexed to Powell's cross-bill. The assignment of them is in these words: "For value received, I assign the within note to N. Powell, and agree to take it up at maturity. H. Lewis." The testimony taken by the master shows that the mortgage to Lewis was merely to indemnify him as indorser for Shipp on divers notes and bills, the particulars of which as to dates and times of maturity are not given, and that the four notes described in the mortgage were mere fictions.

Whatever right Powell had as against Lewis he has against his assignees in bankruptcy. Powell's rights were in nowise impaired by the bankruptcy of Lewis. The assignees of Lewis can assert no right as against Powell, that Lewis himself might not assert, if he were not a bankrupt. The assignees are